UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRITTINI LUNA,

       Plaintiff,

vs.                                              CIV 06-0449 KBM/ACT

SED MEDICAL LABORATORIES, INC.,
and LOVELACE SANDIA HEALTH SYSTEMS, INC.,

       Defendant.[1]

## MEMORANDUM OPINION AND ORDER

       This matter is before the Court on Defendant's Motion for Summary Judgment *(Doc. 35)* on Plaintiff's remaining claims for sex discrimination in compensation in violation of Title VII and the Equal Pay Act.[2]  Pursuant to 28 U.S.C. § 636© and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.  Having reviewed the motion, the memoranda and exhibits submitted by the parties, and the relevant authorities, the Court finds that the motion is well taken in part and will be granted in part.

Summary Judgment Standard

       Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

    [1]  Defendant "Lovelace Health System, Inc." indicates that Plaintiff incorrectly identified it as "S.E.D. Medical Laboratories, Inc. and Lovelace Sandia Health System, Inc."  *Doc. 6* at 1.

    [2]  I previously dismissed without prejudice Plaintiff's retaliation and hostile work environment claims in set forth in Counts I and II for lack of subject matter jurisdiction.  *See Doc. 14*.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©. The Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)). Indeed, summary judgment

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## Material Undisputed Facts

Plaintiff was employed by Defendant from 1992 until her resignation in November 2005. She applied for and received a transfer to the position of Histotechnician I in February 2002. Luna testified in her deposition that "I was told I was not a histotech, I was in training, and I could not have a raise." *Doc. 36,* Exh. A at 48, ll.11-13. After two years in that position, Luna was eligible to take her board examination for certification as a histotechnician. Based upon statements from her superiors, Luna believed that with the certification, a promotion to Histotechnician II or III and corresponding raise would follow.

Before she was scheduled to take the certification exam, however, Plaintiff's laboratory merged with another laboratory. The merged entity eliminated the I, II and III classification

levels, and all were simply titled "Histotechnician." Moreover, Luna testified that the following conversation took place with her supervisor Susan Armstrong:

> a month before I took the test is when Susan came to me and told me, "Go ahead and take the test, it's up to you, whatever you do, but it doesn't matter anymore, it's not a requirement, it's not something that we recognize or that will bring you more money," and this is what — you know, "Basically you're taking the test and doing it on your own."

*Id.*, Exh. A at 143, ll. 12-19. Nevertheless, Plaintiff took the certification test as planned and passed on June 30, 2004, and her pay remained at $12.38/hour. She received an annual merit raise to $15.38 in March 2005.

Plaintiff has identified three male histotechs with whom she worked: Dante Luna, Michael Gutierrez and Adesupo Banjo Adesuyi. As to Gutierrez and Adesuyi, Defendant concedes that Plaintiff has established a *prima facie* case of discrimination in compensation. *Doc. 35* at 12. Defendant has articulated "experience" as the <u>sole</u> legitimate business reason for the higher hourly wage for these two employees. Indeed, at the time Plaintiff filed her charge with the EEOC, Michael Gutierrez had six years of experience as a histotech and was making $21.50/hour. Adesupo Banjo Adesuyi, with fifteen years of experience, was hired by Defendant in August 2005 at a starting pay rate of $22.00/hour.

Defendant further argues that as to the remaining male employee, its "documents and testimony evidencing that Dante Luna's pay was lower than Plaintiff's are undisputed." *Doc. 35* at 12, n.7. However, Defendant's submitted exhibits reveal that this was not always the case. Less than a month after Luna passed her exam, Defendant promoted Dante Luna on July 19, 2004 to a "Histotech Trainee" position at $14.50/hour. *Doc. 35,* Attachment 4 at Exh. M. It

3

therefore appears that from July 2004 until March 2005, Defendant was paying $2.12/hour more in compensation to a less experienced male in a "trainee" position.  *Id.*, Attachment 4 at 5, ¶21 (Defendant's Director of Human Resources Declaration: "Plaintiff was more experienced than Dante Luna. . . . who had not completed his training or obtained his certification.").  This situation was "remedied" when Plaintiff received a standard merit raise in March 2005 to $15.38/hour.  From July 2005 when Dante Luna received a merit raise to $15.00/hour until Plaintiff submitted her resignation letter, she was paid only 37 cents more per hour than Dante Luna.

Analysis

At this juncture, "under the EPA, 'the onus is on the employer to establish that the pay differential was premised on a factor other than sex."  *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997), quoting *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993).  Given the above observation that less experienced Dante Luna received higher pay than Plaintiff for about nine months, I believe that a reasonable juror might find that Defendant fails to meet its burden on the Equal Pay Act claim.

"Under Title VII, however, the plaintiff must prove that the employer had a discriminatory intent.'"  *Id.*  Plaintiff must come forward with evidence that would justify a reasonable juror in finding that the proffered reason for the discrepancy in pay is mere pretext for Defendant's intentional discrimination based upon gender.  Plaintiff points out that Carolyn Crawford who was hired in October 2005, is paid less ($21.00) than Michael Gutierrez ($21.50) although she has two more years of experience as a histotech.  I agree with Defendant that this has limited relevance to the pretext inquiry – there could be reasons other than experience that

would justify a higher salary for Gutierrez.  Nevertheless, viewing all of the evidence in the light most favorable to the non-movant, I find that Plaintiff has raised a material issue of fact in dispute that would preclude the entry of summary judgment on the issue of liability .

As to damages, however, I find that she has failed to come forward with any evidence that would support a finding that she was constructively discharged. "A financial detriment alone, while it may be an adverse employment action, does not create an objectively intolerable work environment such that Plaintiff has no choice but to resign." *Bexley v. Dillon Companies, Inc.*, 2006 WL 758474 at *4 (D. Colo. 2006).  Instead, if, as here,"an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005), quoting *Jeffries v. Kansas*, 147 F.3d 1220, 1233 (10th Cir. 1998).  Therefore, Plaintiff's resignation precludes her from recovery of post-employment lost wages and reinstatement.  *See Mallinson-Montague  v. Pocrnick*, 224 F.3d 1224, 1236 (10th Cir.2000) (when a plaintiff resigns, neither back pay nor front pay are available absent a showing of constructive discharge).

Wherefore,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Summary Judgment *(Doc. 35)* is granted in part.  Defendant is granted  partial summary judgment on Plaintiff's claims for lost wages post-dating her resignation from employment.  In all other respects, the motion is denied.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.